DR. JOHN E. KEE v. DR. W. F. BABER ET AL.

No. A-6229. Decided May 29, 1957.
Rehearing overruled July 10, 1957.
(303 S.W. 2d Series 376.)

388

*Victor A. Speert,* of San Antonio, for petitioner Dr. John E. Kee, *Henry Klepak,* of Dallas, for intervenors, appellants.

*Will Wilson*, Attorney General, *Mary K. Wall* and *Charles M. Babb*, of Austin, Assistants Attorney General, for appellees.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is a direct appeal from an order of the District Court of Travis County, 53rd Judicial District, declaring the validity of certain rules adopted by the Texas State Board of Examiners in Optometry and refusing to grant a permanent injunction restraining their enforcement. Article 5, Sec. 3-b, Constitution of Texas, Article 1738a, Vernon's Ann. Texas Stats., Rule 499a, Texas Rules of Civil Procedure. Dr. John B. Kee, plaintiff below and intervenors, Drs. Robert K. Shannon, Ellis Carp and Stanley C. Pearle contended that three rules promulgated by defendants, Dr. W. F. Baber and others as members of Texas State Board of Examiners in Optometry were void as being contrary to and inconsistent with the Legislative Act relating to the practice of Optometry. Articles 4552 et seq., Vernon's Ann. Texas Stats. The rules are referred to in the briefs as (a) the basic competence rule, (b) the "bait" advertising rule and (c) the corporate practice rule. It was stipulated below that these rules were duly promulgated by the Texas State Board of Examiners in Optometry and that the question presented by the suit related to the power of the Board of promulgate and enforce such rules.

In oral argument the attorney for appellants-intervenors described optometry as being a quasi-profession in that an optometrist not only performs professional duties such as measuring and examining eyes preliminary to prescribing ophthalmic lenses, but also occupies the position of a merchant or tradesman in that he sells manufactured products such as lenses,

frames, spectacles and other optical goods. It is not inaccurate to describe this as a dispute between two groups of optometrists, one of which emphasizes the merchandising factor of the profession or occupation and contends that the cost of suitable glasses for the using public may be greatly reduced by eliminating numerous unnecessary steps and practices which are insisted upon by the opposing group who regard such procedures and regulations as necessary to safeguard the public health. To our minds this basic conflict in Texas has been resolved by the Legislature and the optometrists themselves in ·favor of the group favoring strict regulation essentially by the profession itself. The trial court was correct in so holding and accordingly the judgment appealed from will be affirmed.

■ There are certain areas of agreement conceded by appellants which narrow the questions before us. It is recognized that "the Legislature has the power to define optometry, to prescribe the duties of optometrists, to provide for 'basic competence,' to prohibit 'price and bait advertising' and to prohibit 'corporate practice.' "—but it is asserted that rules or regulations cannot conflict with the statutes nor can they subvert or enlarge on the statutory authority or policy.

It must likewise be conceded that broad regulatory powers, many of which are somewhat discretionary in nature, are delegated to the Texas State Board of Examiners in Optometry, which for convenience we shall hereafter refer to as the Optometry Board. Article 4556, Vernon's Ann. Texas Stats. provides that "The board shall have the power to make such rules and regulations not inconsistent with this law as may be necessary for the performance of its duties; the regulation of the practice of optometry and the enforcement of this Act." This Authority is similar in scope that vested in the State Board of Medical Examiners under the Medical Practice Act[1] and in this Court under the State Bar Act,[2] and differs from the narrower

---

[1] "Article 4509, Vernon's Ann. Texas Stats. The Texas State Board of Medical Examiners shall have the power to * * * make such rules and regulations not inconsistent with this law as may be necessary for * * * the regulation of the practice of medicine * * *."

[2] "Article 320a-1 provides in part that: "* * * the Supreme Court of Texas shall prepare and propose rules and regulations for the * * * conduct of the State Bar; and prescribing a code of ethics governing the professional conduct of attorneys at law. When the Court has prepared * * * such rules * * *, it shall submit * * * a copy * * * in ballot form to each registered member * * * for a vote thereon. * * * and each * * * of such rules * * * that have received a majority of the votes * * * shall be promulgated by said Court and shall become immediately effective."

delegation contained in the Dental Practice Act[3] and other similar Acts relating to administrative Boards that could be mentioned.[4] The Optometry Board is empowered not only to adopt regulations necessary for the performance of its duties but also such rules as are necessary "for the regulation of the practice of Optometry."

It is apparent that the Optometry Board in adopting the three rules now under attack was attempting to implement the statutory provisions relating to the licensing of applicants and the revocation of such licenses. We here set out the pertinent provisions of Article 4563, Vernon's Ann. Texas Stats. and in parenthesis thereunder the Attorney General's accurate summations of the contents of the rules relating to each paragraph of the statute:

"Article 4563: The Texas State Board of Examiners may, in its discretion, refuse to issue a license to any applicant and may cancel, revoke or suspend the operation of any license by it granted for any of the following reasons: * * *

"(b) That said applicant or licensee is guilty of any fraud, deceit or misrepresentation in the practice of optometry or in his seeking admission to such practice;

("Bait Advertising Rule. This rule states that the advertising of certain representations regarding the quality or cost of services rendered or materials furnished by the optometrist will be considered prima facie evidence of fraud, deceit or misrepresentation within the meaning of Article 4563(b), and that upon proof of such advertising the person charged shall have the burden of establishing certain facts in rebuttal of the prima facie presumption.

"If the advertisement represents that any part of his serv-

---

[3]Article 4543 "* * * The Board [of Dental Examiners] may prescribe rules and regulations, in harmony with the provisions of this title governing its own proceedings and the examinations of applicants for the practice of dentistry."

Artcle 4551d: "The Texas State Board of Dental Examiners is hereby empowered and authoɪized to adopt, promulgate, and enforce such rules and regulations as the Board may deem necessary and advisable to carry out the provisions of, and not inconsistent with, Chapter 9, Title 71, of the Revised Civil Statutes of Texas as amended, and for the enforcement of this Act; however, notice must be given at least ten (10) days in advance of any meeting called to consider the adoption of any rule, or regulation, or change therein; such notice as herein provided for shall be accomplished by publication at least once in a newspaper having general circulation in the State of Texas."

[4]Article 4514—Nurses' Examiners. Article 4542a, Sec. 4 Board of Pharmacy. Article 4512b, Sec. 4 Chiropractors.

ices or materials is free, he must show that his charge for other services furnished to patients receiving the free service is not in excess of the amount customarily charged by other optometrists in the same locality or similar localities for similar services or materials, not including the services or materials which are advertised as free.

"If the advertisement represents that his charges are cheaper, he must show that his charge for the services or materials is less than the amount customarily charged by others for similar services or materials in the same locality or similar localities.

"If the advertisement represents that his services or materials are superior in any way, he must show wherein they are superior to the services or materials of optometrists generally.")

"(c) That said applicant or licensee is unfit or incompetent by reason of negligence;

("Basic Competence Rule. This rule states that the Board considers it necessary to an adequate examination of a patient for whom an optometrist issues a prescription for an ophthalmis lens, that in the initial examination of the patient the optometrist make and record, if possible, certain enumerated findings of the condition of the patient, and that every prescription for a lens include certain information; that the wilful or repeated failure of an optometrist to comply with these requirements will be considered to constitute prima facie evidence that he is unfit or incompetent by reason of negligence within the meaning of Article 4563(c); and that upon proof of noncompliance at a hearing before the Board for revocation of his license the person charged shall have the burden of establishing that compliance with the rule was not necessary to a proper examination of the patient in the particular case.")

"(i) That said licensee lends, leases, rents or in any other manner places his license at the disposal or in the service of any person not licensed to practice optometry in this State."

("Corporate Practice Rule. The rule states that an optometrist who practices optometry on the premises of a mercantile establishment should observe certain specified conditions regarding the separation of his practice from the business operations of the mercantile establishment, and that proof of noncompliance with any of these conditions will be considered prima

*facie* evidence that the optometrist has placed his license at the disposal or in the service of an unlicensed person in violation of Article 4563 (i)." )

■ The rebuttable presumption is a device now generally recognized as valid when reasonably applied in judicial trials or administrative hearings. The power of the Legislature or an administrative board having rule-making authority to prescribe such procedures cannot be questioned unless it clearly appears that the rebuttable presumption bears no logical relationship to the ultimate fact or conclusion sought to be established. Mobile, J. & K.C. Ry. Co. v. Turnipseed, 219 U.S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78; Helvering v. Rankin, 295 U.S. 123, 55 Sup. Ct. 732, 79 L. Ed. 1343; Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 65 Sup. Ct. 982, 89 L. Ed. 1372, 73 C.J.S. 444, Public Administrative Bodies and Procedure Section 124.

The gravamen of appellants' attack upon the three rules in question are that they are *inconsistent* with the provisions of Article 4563. We do not so regard them. The provisions of the legislative enactment are broad and general in scope. An intention to vest the Optometry Board with authority to fill in the details relating to the proscribed actions by members of the profession is indicated. While the rules in a sense relate to procedures before the Optometry Board, the circumstance that such Board is authorized to prescribe such "rules and regulations as may be necessary for * * * the regulation of the practice of optometry" lends support to a construction favoring a broad and liberal delegation of authority. Williamson v. Lee Optical Company of Oklahoma, Inc., 348 U.S. 483, 75 Sup. Ct. 461, 99 L. Ed. 563; Finlay Straus, Inc. v. University of New York, 186 Misc. 242, 59 N.Y. S. 2d 429, Finlay Straus, Inc. v. University of State of New York, 270 App. Div. 1060, 62 N.Y. S. 2d 892, Strauss v. University of State of New York, 282 App. Div. 593, 125 N.R. S. 2d 821, Irving Strauss v. University of the State of New York, 2 N.Y. 2d 464, 141 N.E. 2d 595. Fisher v. Schumacher, (Fla.) 72 So. 2d 804.

■ Section (b) of Article 4563 proscribes "fraud, deceit or misrepresentation in the practice of optometry." Misleading advertising is a familiar species of deceit. The "bait advertising rule" simply places upon the optometrist advertising that his services or supplies are better or cheaper than those supplied by his competitors, the burden of showing that such statements are true and hence not fraudulent. The presumption raised by the

rule is rebuttable, it bears a logical relationship with the conclusion—that of fraud—condemned by the statute. It in no way violates the provisions of Articles 773 and 774 of Vernon's Ann. Pen. Code.[5] Similar rules or outright proscriptions relating to advertising have been upheld in other jurisdictions. Ritholz v. Commonwealth of Virginia, 184 Va. 339, 35 S.E. 2d 210; Abelsons' Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412, 75 Atl. 2d 867, 22 A.L.R. 2d 929; State v. Rones, 223 La. 839, 67 So. 2d 99; Seifert v. Buhl Optical Co., 276 Mich. 692, 268 N.W. 784; Commonwealth v. Ferris, 305 Mass. 233, N.E. 2d 378. See also the "Strauss cases" from New York, heretofore cited. For a discussion of the constitutional aspects of the problem involving advertising and administrative regulation of a profession affecting the public health, see Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 Sup. Ct. 570, 79 L. Ed. 1086. It follows that the validity of the bait advertising rule must be sustained.[6]

■ In their attack upon the "basic competence rule" appellants

---

[5]"Article 773. Soliciting patients.

"No physician, surgeon, osteopath, masseur, optometrist, or any other person who practices medicine or the art of healing the sick or afflicted, with or without the use of medicine shall employ or agree to employ, pay or promise to pay, or reward or promise to reward any person, firm, association of persons, partnership or corporation for securing, soliciting or drumming patients or patronage. No person shall accept or agree to accept any payment, fee or reward, or anything of value, for securing, soliciting or drumming for patients or patronage for any physician, surgeon, osteopath, masseur, optometrist, or any other person who practices medicine or the art of healing with or without medicine. Whoever violates any provision of this Article shall be fined not less than One Hundred nor more than Two Hundred Dollars for each offense. Each payment or reward or fee or agreement to pay or accept a reward or fee shall be a separate offense.

"Art. 774. Advertising.

"The preceding Article shall not be construed to prohibit the inserting in a newspaper of any advertisement of such person's business, profession and place of business, or from advertising by handbills and paying for services in distributing same."

[6]This appeal insofar as the "bait advertising rule" is concerned was briefed with reference to Article 4563, Sec. (b) which proscribes generally "any fraud, deceit or misrepresentation in the practice of optometry." On May 20, 1957, the Governor signed Senate Bill No. 104 passed by the 55th Legislature which contained an emergency clause making it effective upon final passage. This Act amended Article 4565g, Vernon's Ann. Texas Stats. so as to contain a definite prohibition of misleading advertising as follows: "It shall be unlawful for any person, firm or corporation in this state to solicit patients or patronage for any individual licensed as a physician or optometrist, or for physicians or optometrists as professional groups, or to publish, cause or allow to be published any statement or advertisement concerning ophthalmic lenses, frames, eyeglasses, spectacles or parts thereof which is fraudulent, deceitful, misleading, or which in any manner whatsoever tends to create a misleading impression, including statements or advertisements of bait, discount, premiums, price, gifts or any statements or advertisements of a similar nature, import or meaning."

The logical relationship of the "bait advertising rule" to this definite statutory proscription is obvious.

assert that this provision constitutes an attempt by the Optometry Board "to tell other qualified licensed optometrists how to practice optometry" and subjects anyone who disagrees with the procedures prescribed by the Board to a presumption of sub-standard conduct. Optometry has been classified by the Legislature as a profession and as such subject to a degree of self-regulation. As is the case of most professions, a certain proportion, generally a majority group, in a sense do tell the other members of the profession "how to run their business." This is a necessary adjunct or burden of regulation which the Legislature has deemed necessary to prescribe in order to safeguard the public health and welfare. This contention does not reach the heart of the question involved which is: Does the Optometry Board possess authority to prescribe standards which may be applied, tentatively at least, to establish the issue of negligence in the practice of optometry? We believe that it does. A specific case of alleged negligent conduct is not before us but rather the problem of how the Optometry Board may proceed in determining an issue of alleged negligence when presented in a proper case. The regulatory body established by statute has set forth certain procedures which it deems important to a proper examination of the eyes preparatory to the manufacturing of lenses and the fitting of glasses. Some of these procedures may seem unnecessarily detailed, but it lies within the power of the regulatory body composed as it is of supposedly competent members of the profession, to prescribe the proper steps which should be followed in conducting an eye examination. There is a logical relationship between the adoption of standard procedures and the determination of the issue of negligence. We cannot say that the "basic competence rule" which at most sets up a rebuttable presumption is unreasonable nor that it is "inconsistent" with the optometry statute. Klein v. Department of Registration and Education, 412 Ill. 75, 105 N.E. 2d 758; Reyburn v. Minnesota State Board of Optometry, 247 Minn. 520, 78 N.W. 2d 351; Abelson's Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412, 75 Atl. 2d 867; Jaffe v. State Department of Health, 135 Conn. 339, 64 Atl. 2d 330, 6 A.L.R. 2d 664.

■ The third rule attacked—"the corporate practice rule"—has for its stated purpose among other things the safeguarding of the optometrist—patient relationship and the effective implementation of the Legislature's prohibition against placing an optometrist's license "in the service or at the disposal of unlicensed persons." Appellants assert that this rule is inconsistent with and contrary to the provisions of Article 4566-1, Vernon's Ann. Stats. which provides that, "* * * it shall not be

construed as a violation of this Act for any optometrist to lease space from an establishment on a percentage or gross receipts basis or to sell, transfer or assign accounts receivable."

As we construe the rule, it was adopted with the statutory provision above quoted in mind. The rule specifically states that "all credit accounts for patients shall be established with the optometrist and not the credit department of the mercantile establishment [from which he secures office space], provided however, nothing herein shall prevent the optometrist thereafter from selling, transferring or assigning any such account."

The rule does not say that an optometrist cannot lease office space from a business or mercantile "establishment," but seeks to control the relationships between the optometrist and his lessor to the extent that confusion on the part of the public will not arise and the optometrist-patient relationships will not be endangered. This end is sought to be accomplished by means of a presumption which an optometrist may rebut if despite his violation of the rule, he can show that he has not placed his license "at the disposal or in the service of any person not licensed to practice optometry." Cf. Rockett v. Texas State Board of Medical Examiners, Texas Civ. App., 287 S.W. 2d 190, wr. ref. n.r.e. See also Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 Sup. Ct. 461, 99 L. Ed. 563; State ex rel Fatser v. Zale Jewelry Co., 179 Kan. 628, 298 Pac. 2d 283; Bennett v. Indiana State Board of Optometry, 211 Ind. 678, 7 N.E. 2d 977; Neill v. Gimble Bros. 330 Pa. 213, 199 Atl. 178; McMurdo v. Getter, 298 Mass. 363, 10 N.E. 2d 139; Ezell v. Ritholz, 188 S.C. 39, 198 S.E. 419; State ex rel Standard Optical Co. v. Superior Court, 17 Wash. 2d 323, 135 Pac. 2d 839; State v. Standard Optical Co. of Oregon, 182 Ore. 452, 188 Pac. 2d 309.

Appellants' briefs fail to disclose error and the judgment of the trial court declaring that "the (1) basic competence rule, (2) bait advertising rule, and (3) corporate practice rule * * * are constitutional and reasonable and not inconsistent with or contrary to the Optometry Act" is accordingly affirmed.

Opinion delivered May 29, 1957.

Rehearing overruled July 10, 1957.