lis Witt, Houston, with above firm, for respondent.

PER CURIAM.

We are of the opinion that the decision in this case is controlled by Allgeyer v. State of Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 and St. Louis Cotton Compress Company v. State of Arkansas, 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297. We are unwilling to take the position that in view of Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 and Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S. Ct. 602, 87 L.Ed. 777, the Supreme Court of the United States will probably overrule the Allgeyer and Cotton Compress cases. We abide by what the Supreme Court has held and refuse to speculate upon what said Court may hold.

The application for writ of error to the Court of Civil Appeals (opinion reported in 340 S.W.2d 339) is refused, no reversible error.

**TEXAS STATE BOARD OF EXAMINERS IN OPTOMETRY, Petitioner,**

v.

**Ellis CARP et al., Respondents.**

No. A–7630.

Supreme Court of Texas.

Feb. 8, 1961.

Rehearing Denied March 15, 1961.

Will Wilson, Atty. Gen., John Reeves, Asst. Atty. Gen., Thos. G. Gee, of Graves, Dougherty & Gee, Austin, Joe S. Moss, Houston, for petitioner.

Douglas Bergman, Henry Klepak, Newberry & Holley, Dallas, for respondents.

WALKER, Justice.

This is an appeal from an order of the district court granting Ellis Carp, respondent, a temporary injunction against the Texas State Board of Examiners in Optometry, petitioner. The Court of Civil Appeals affirmed with an unpublished opinion. We have concluded that the temporary injunction was improperly granted, but the parties raise several other questions which should be considered at the outset.

Respondent says we have no jurisdiction because this is an appeal from an interlocutory order of the district court and the judgment of the Court of Civil Appeals is made final by Article 1821.[1] There is no merit in this contention. The Supreme Court would have jurisdiction of an appeal from a final judgment in the main case out of which the application for a temporary injunction grew, and therefore has jurisdiction to review by writ of error the action of the trial court in granting such injunction. Southwest Weather Research, Inc. v. Jones, Tex., 327 S.W.2d 417, and authorities there cited.

Petitioner's fifth, sixth and seventh points of error assert that the trial court erred in overruling its plea of privilege, motion for severance, and plea to the jurisdiction. The orders overruling the motion for severance and plea to the jurisdiction are interlocutory, and there is no statute providing for an appeal therefrom. They cannot be attacked in an appeal from another interlocutory order which is appealable except in so far as the questions raised might affect the validity of the latter order. Zanes v. Mercantile Bank & Trust Co., Tex.Civ.App., 49 S.W.2d 922 (wr. ref.); Witt v. Witt, Tex.Civ.App., 205 S.W.2d 612 (no writ). Article 2008 gives either party the right to appeal from an order sustaining or overruling a plea of privilege, but the appeal is governed by Rule 385, Texas Rules of Civil Procedure, and filing of the record in the appellate court within the time there specified is jurisdictional. Walker v. Cleere, 141 Tex. 550, 174 S.W.2d 956. The record in this case was filed in the Court of Civil Appeals over three months after the plea of privilege was overruled, and no extension of time was requested or granted. The intermediate court did not acquire and we do not have jurisdiction to review that order. This brings us to the principal question in the case, but an additional statement should

[1]. All statutes are referred to by the article number under which they appear in Vernon's Annotated Texas Civil Statutes.

be made before attempting to discuss the same.

Article 4563 authorizes the Board, in its discretion, to refuse to issue a license or to cancel, revoke or suspend the operation of a license for any of the reasons stated therein, including: "(b) That said applicant or licensee is guilty of any fraud, deceit or misrepresentation in the practice of optometry or in his seeking admission to such practice; * * * (i) That said licensee lends, leases, rents or in any other manner places his license at the disposal or in the service of any person not licensed to practice optometry in this State; (j) That said applicant or licensee has wilfully or repeatedly violated any of the provisions of this Act." Article 4565g provides that it shall be unlawful to publish any statement or advertisement concerning eye-glasses which is fraudulent, deceitful, misleading, or which in any manner tends to create a misleading impression, including statements or advertisements of bait, discount, premiums, price, gifts or any statements or advertisements of a similar nature, import or meaning.

To implement these statutory provisions, the Board promulgated its so-called Bait Advertising, Corporate Practice and Basic Competence Rules. The three rules were attacked by respondent and others in Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376, and were there upheld as constituting a valid exercise of the power conferred upon the Board by Article 4556. A statement of the substance of the rules will be found in the opinion in that case. The Corporate Practice Rule, which applies to optometrists who lease space from and practice optometry on the premises of a mercantile establishment, provides that noncompliance with certain specified conditions will be considered by the Board to constitute prima facie evidence of a violation of Article 4563(i). Upon proof of such noncompliance, the person charged has the burden of establishing that his license has not been placed at the disposal or in the service of an unlicensed person. Two of the conditions laid down by the rule are that the leased space be definite and apart from space occupied by other occupants of the premises, and have a patient's entrance opening on a public street, hall, lobby, corridor or other public thoroughfare.

After the decision in Kee v. Baber, supra, the Board discussed the Corporate Practice Rule and expressed the opinion, as reflected by its minutes, that the leased space could not be regarded as definite and apart from the mercantile establishment unless separated from other occupants of the premises by a solid partition or wall from floor to ceiling, that the aisle of a mercantile establishment such as a jewelry or department store could not be considered as a public thoroughfare, and that an entrance could not be considered a patient's entrance unless actually so used by the optometrist's patients. The members of the Board were also of the opinion that Article 4565g prohibits any type of price advertising without regard to whether the advertisement might be false, fraudulent or misleading.

The present suit was originally instituted by the Board against respondent and others alleging that some of respondent's employees were practicing optometry without a license and praying for temporary and permanent injunctions. Respondent filed a cross-action in which he attacks the Board's interpretations of the Corporate Practice Rule and Article 4565g on the ground that such interpretations are arbitrary, capricious and illegal. He prayed for a declaratory judgment and also sought injunctive relief. The Board was denied an injunction, but the trial court granted respondent a temporary injunction restraining the Board from sending out notices to appear before the Board, requesting appearances at hearings of the Board, or filing any charges, proceedings or complaints, civil, criminal or administrative, arising out of: (1) any advertisement published by respondent or his agents unless such advertisement is fraudulent, deceitful or misleading, or (2) the conducting of a practice by respondent or his agents in an office located

in a mercantile establishment without such office being separated from the mercantile establishment by a solid partition from floor to ceiling, or without providing a separate patient's entrance opening on a public hall, street, lobby, corridor or other public thoroughfare. No appeal was taken from the denial of the Board's application for a temporary injunction.

In affirming the order of the trial court granting respondent a temporary injunction, the Court of Civil Appeals expressed the view that the separate patient's entrance condition of the Corporate Practice Rule is arbitrary. This conclusion is contrary to our holding in Kee v. Baber, supra. On the other hand the Board's interpretation of Article 4565g is not in accordance with the construction adopted in Shannon v. Rogers, Tex., 314 S.W.2d 810, which was decided shortly after the hearing on the temporary injunction in this case was concluded. It is our opinion, however, that the propriety of the relief granted here does not turn upon whether the Board's interpretations of the statute and rule are reasonable or arbitrary, valid or invalid. There is no occasion then for us to give any further consideration to such questions at this time.

■ Respondent alleged, among other things, that the members of the Board, who are practicing optometrists,[2] were acting maliciously in furtherance of a conspiracy to harass and annoy him and destroy his practice. He directs our attention to the evidence showing that on one occasion some fourteen of respondent's employees were requested to attend a meeting in Dallas to determine whether they were complying with the Basic Competence Rule. It also appears that one member of the Board is a co-owner of respondent's largest competitor, and several of respondent's employees have left him to accept employment with the latter organization. In some instances the discussions which brought this about

occurred shortly before or after a meeting of the Board at which the employee in question had been notified to appear. These circumstances do not warrant the conclusion that there is a conspiracy, or that the Board has made any improper use of its powers, to annoy, harass or damage respondent.

■ We recognize that the unlawful acts of public officials may be restrained when they would cause irreparable injury or when such remedy is necessary to prevent a multiplicity of suits. Missouri, K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S.W. 138, 10 L.R.A.,N.S., 681; Terrell v. Kasch, Tex.Civ.App., 10 S.W.2d 208 (wr. ref.); Pomeroy's Equity Jurisprudence, 5th ed. 1941, Vol. 4, page 947, § 1345a. Respondent attempts to invoke that rule here. He owns and operates some sixteen offices in mercantile establishments throughout Texas, and says that it will be impossible to erect partitions from floor to ceiling separating his operations from the portion of the premises occupied by the mercantile establishment or provide a separate outside entrance opening on a public thoroughfare for the use of his patients. It is his position that enforcement of the Board's construction of the Corporate Practice Rule will result in his having to close these sixteen stores and will thus subject him to substantial financial loss. We do not agree.

■ If any charge is filed against respondent because of his noncompliance with the Corporate Practice Rule, the ultimate question to be decided is whether he has violated Article 4563(i). Noncompliance with the rule merely makes a prima facie case, and respondent can defeat the complaint by showing that he does not place his license at the disposal or in the service of an unlicensed person. Whether respondent will be able to make that showing is a matter of conjecture, and any injury to him

2. Article 4553 requires that the members of the Board shall have been engaged in the practice of optometry in this State for at least five years immediately preceding their appointment.

resulting from the Board's interpretation of the rules is equally a matter of conjecture. In the event the Board finds that he has violated the statute, it may but is not required to revoke his license. If his license is revoked, the statute gives him the right of appeal to the district court, and the court may then stay or enjoin the decision of the Board when such action appears to be necessary for the protection of his rights.

Respondent's situation is similar in many respects to that of the shippers in Sun Oil Co. v. Railroad Commission of Texas, Tex., 311 S.W.2d 235, 238. There the Commission had entered a general order finding that shipments of pipe made under certain circumstances were in intrastate commerce and ordering that the same should move on rates prescribed by it. In holding that the order was not final and therefore not reviewable, we said:

> "In other words, the latter [shippers] are in no different position by reason of the order than they were before. Proceeding as they have been, and assuming the view of the Commission to be correct as to the intrastate character of the traffic, they could have been moved against by the Commission even without any preceding declaratory order such as that before us. And assuming that they will be proceeded against hereafter, they will be as free to contend the traffic in question to be interstate as if the order were never made. The only difference the order makes is that they now have good reason to believe that they will be proceeded against if they continue to follow the same shipping system and to pay the interstate rate."

If charges are filed against respondent based on price advertising or noncompliance with the Corporate Practice Rule, he will be free to contend before the Board and in an appeal from any final order entered by the Board that the administrative constructions of the statute and rule are arbitrary and illegal. Equitable relief is not necessary to prevent a multiplicity of suits, and this is not a case in which impending administrative action creates a danger of immediate and irreparable injury. See Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L. Ed. 1563.

As pointed out in Turner v. Bennett, Tex. Civ.App., 108 S.W.2d 967, 971 (no writ), "there is a vast difference in a court reviewing a final order of an administrative board and in prohibiting such board from making any order or from prosecuting an inquiry to ascertain whether any order will be necessary. That courts are without authority to thus interfere with commissions and administrative departments of the government in the lawful exercise of duties and functions committed to them by law is well settled." See also State Board of Barber Examiners v. Comer, Tex.Civ.App., 109 S.W.2d 1012 (no writ). Various reasons are assigned by the courts as grounds for refusing to grant relief against threatened or pending administrative action. See 42 Am.Jur. Public Administrative Law, p. 574, § 195 et seq. A board or commission created by the Legislature with authority and responsibility for determining in the first instance whether certain action shall be taken is not subject to restraint by the courts whenever it appears that an erroneous conclusion has been reached on some preliminary or procedural question. Any other rule would afford an opportunity for constant delays in the course of administrative proceedings, and there is no real need for equitable relief in the ordinary case until a final administrative determination has been made.

The temporary injunction issued in this case prevents the Board from exercising in certain instances the powers vested in it by statute. Proceedings under Article 4563 are begun by filing charges in writing and under oath, and the charges may be made by any person. Article 4556 gives the Board power to issue subpoenas, administer oaths, take testimony, and institute actions in its own name to enjoin the viola-

tion of any provision of the Act. If a complaint is presented charging that a licensee has been guilty of any misconduct constituting grounds of revocation, the Board is authorized by Article 4563 to accept and file the same, issue notices, conduct a hearing, and determine the charges upon their merits. In performing these functions, it must hear evidence, ascertain the facts, interpret the statutes and its own rules, apply the same to the facts, and determine whether to cancel, revoke or suspend the license of the person charged. No contention is made that these statutes are invalid, and it is our opinion that the Board is entitled to and should exercise the powers which they confer and discharge its lawful responsibilities without interference from a court of equity.

The judgments of the courts below are reversed and the temporary injunction is dissolved.

GREENHILL and STEAKLEY, JJ., not sitting.