

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN, TEXAS 78711**

CRAWFORD C. MARTIN
ATTORNEY GENERAL

November 1, 1972

Hon. Andy James
Administrator
Texas Real Estate Commission
P. O. Box 12188, Capitol Station
Austin, Texas 78711

Opinion No. M-1256

Re: Whether the Texas Real
Estate Commission may
require real estate
licensees to use only
a specific contract
form in negotiating
real estate contracts.

Dear Mr. James:

You have asked for the opinion of this office on the following questions:

"1. Is the Texas Real Estate Commission authorized to require that real estate licensees use only a specific contract form when acting as a real estate licensee in negotiating such real estate contracts?

"2. What disciplinary action would the Texas Real Estate Commission be authorized to take against a licensee who, knowingly, used a contract form other than the one specified by the Commission in negotiating a real estate contract as agent for another or others?"

The controlling issue presented by your first question is whether the Board would exceed its delegated powers in promulgating a rule or regulation requiring the use of some presumably legal and proper contract form to be used by real estate licensees in their professional conduct of real estate negotiation between buyers and sellers. We do not understand that such a rule would require either the buyer or seller to use such a form, since they are free to prepare their own legal instrument or to cause it to be prepared by the attorney of their choice. Nor do we understand that such a rule would prevent a licensee, who may be licensed to practice law, from preparing the legal instrument

for the parties should they desire him to do so.   We are not here faced with the situation in which a licensee may, for his own protection, prepare a legal instrument to cover the transaction to the extent of securing his own commission or other consideration but rather the use of a legal instrument by a licensee to cover the substantive legal contract as between the buyer and the seller.

In determining the controlling question, we must examine the general purposes of the Real Estate License Act, Article 6573a, Vernon's Civil Statutes, as well as certain specific provisions of the act.  One of the Legislature's primary purposes in passing the Act was to assure and protect the personal and professional business relationship between a real estate licensee and his buyer or seller client.  To make certain that such purpose is carried out, the Act requires the real estate salesman or broker to be licensed before he may practice within the state.  He must apply for a license, evidence his ability and qualifications, pass an examination, and make bond under Sections 8 through 11 of the Act prior to the issuance of his license under Section 12.

In this statutory context of fixing personal identification and personal responsibility, certain powers are delegated to the Commission in connection with its authority to promulgate the rule or regulation inquired about.  In 1967, the Act was amended by the Legislature by S.B. No. 215 (ch. 272, pgs. 598-602, 60th Legis., R.S.), giving substantially more detailed powers to the Commission then had previously been conferred.  Section 2 of the present Act was amended in its entirety and now provides, in part, that:

> "The Commission is authorized to employ an Administrator, an Assistant Administrator, and such other employees and officers as shall be necessary to effectively administer and enforce this Act and regulate the real estate brokerage business in the State of Texas. . . The Commission shall adopt such rules and regulations, not inconsistent with this Act, as shall be necessary or appropriate to effectively administer and enforce this Act, regulate the real estate brokerage business, and establish canons of professional ethics and conduct for its licensees . . ." (Emphasis added.)

Section 8 of S.B. 215 evidences the legislative intent for enactment of the 1967 amendments, reciting:

"The fact that interests in real property
are of vital importance to a sound economy and
that the intracacies and complexities of con-
tracting for sales and leases of interest in
real estate require that only persons trained
and qualified in real estate brokerage matters
be permitted to act as Real Estate Brokers and
Real Estate Salesmen; and the further fact that
Texas citizens annually entrust millions of
dollars of their funds to Real Estate Brokers
and Real Estate Salesmen, requires the highest
standards of ethical conduct in line with other
professions affecting the public interest and
welfare; and the further fact that the present
law is inadequate to safeguard the public in-
terest and welfare and the property interests
of the people of this state, create an emergency
and an imperative public necessity . . . "
(Emphasis added.)

Section 16 of the Act provides that the Commission may
refuse or suspend any license it grants for numerous enumerated
reasons involving professional business conduct and ethics con-
cerning the negotiation of sales and contracts, including illegal
or dishonest dealings, bad faith, untrustworthiness, incompetancy,
and disregarding or violating any provision of the Act.

Section 17 likewise provides for cancellation by the
Commission of any license,

"upon proof that the licensee, not being
licensed and authorized to practice law in this
State, for a consideration, reward, pecuniary
benefit, present or anticipated, direct or in-
direct, or in connection with or as a part of
his employment, agency, or fiduciary relations,
as licensee, draws any deed, note, deed of trust
or will, or any other written instrument that
may transfer or anywise affect  the title or
interest in land, or advises or counsels any
person as to the validity or legal sufficiency
of any such instrument above mentioned, or as
to the validity of title of real estate."
(Emphasis added.)

In <u>Kee v. Baber</u>, 157 Tex. 387, 303 S.W.2d 376 (1957), the court held that Article 4556, Vernon's Civil Statutes, which incidentally gave the Optometry Board the same type of powers as given the Real Estate Commission under Article 6573a, was a broad delegation of regulatory powers to the Board to adopt such rules as are necessary for "the regulation of the practice of optometry." See also <u>Texas State Board of Examiners in Optometry v. Carp</u>, 412 S.W.2d 307, 309-310 (Tex.Sup. 1967), cert.den. 88 S.Ct. 241, 389 U.S. 52. Furthermore, it is well established in this state that a state regulatory agency may make reasonable rules and regulations, related to the performance of the specific statutory duty placed upon that agency by the Legislature, whenever the authority to make such rules and regulations is expressly or impliedly conferred upon the agency by statute. <u>Gulf Land Co. v. Atlantic Refining Company</u>, 134 Tex. 59, 131 S.W.2d 73 (1939); <u>Railroad Commission v. Shell Oil Co.</u>, 139 Tex. 66, 161 S.W.2d 1022 (1942); <u>Texas Liquor Control Board v. Super Savings Stamp Co.</u>, 303 S.W.2d 536 (Tex.Civ.App. 1937, error ref. n.r.e.); <u>Gulf C&SF Ry. Co. v. State</u>, 120 S.W.2d 1002 (Tex.Civ.App. 1909, error ref.); and 1 Tex.Jur.2d 656-657, Administrative Law, Sec. 11.

It is an equally settled principle of jurisprudence that when a statute grants the authority or power to do a thing, such as to regulate, it impliedly authorizes whatever is reasonably necessary and proper to the execution of the power expressly granted. 53 Tex.Jur.2d 204, Statutes, Sec. 141, and many cases there cited.

The word "regulate" is a common one of generally recognized meaning and is defined as meaning "to govern or direct according to rule" and "to reduce to order, method or uniformity." Its synonyms are "direct, regulate, order, rule, govern, and control." Webster's New International Unabridged Dictionary (1954).

The means and methods of regulation are here left to the broad discretion of the Commission and our research fails to reveal any case authority which would deny the right to regulate through the required use of a specific contract form.

If the Commission, in its discretion, should make findings to the effect that the required use of the approved form is a necessary and appropriate means of regulation to administer effectively and enforce strictly the Act and the real estate brokerage business, and that without the use of such a form substantial numbers of

licensees will engage in doubtful or possibly illegal contractural transactions involving the illegal practice of law in violation of the statutes, resulting in confusion and reflecting upon the professional conduct of the licensees in this unclear and uncertain field, it is our opinion the courts will uphold the proposed regulation as within the delegated powers of the Commission.

The weight of authority in this county appears to be that the filling in the blanks on a sales contract by a licensed broker or salesman prepared by an attorney, which conduct requires only the use of common knowledge regarding information to be inserted in such blanks and general knowledge concerning legal consequences, does not constitute the practice of law. See State v. Dinger, 109 N.W.2d 685 (Wis.Sup. 1961); Ingraham County Bar Assoc. v. Miller Co., 69 N.W.2d 713 (1955), 53 A.L.R.2d 777; Chicago Bar Assn. v. Quinlan & Tyson, Inc., 214 N.E.2d 771 (Ill.Sup. 1966). However, Texas courts have not decided the precise question, and the foregoing authorities appear to be limited to the preliminary or earnest money contract form only, the reasoning not being applied or extended to include subsequent legal instruments, such as deeds, mortgages, and other instruments which become recorded muniments of title. The drawing or filling in of these instruments require the special skill of an attorney and would constitute the practice of law. See State v. Indiana Real Estate Assn. Inc., 191 N.E.2d 711 (Ind.Sup. 1963). Pioneer Title Ins. & Trust Co. v. State Bar of Nevada, 326 P.2d 408 (Nev.Sup. 1958), and other authorities cited at 53 A.L.R.2d 788, et seq.

It is our opinion that in the absence of a clear sanction by the Commission, the drawing up or supplying of any preliminary or earnest money contract form and the filling in of the blanks for the parties by a real estate dealer may reasonably be deemed suspect and possibly in violation of Section 17 of Article 6573a under the existing state court decisions in this field. See Stewart Abstract Co. v. Judicial Commission of Jefferson County, 131 S.W.2d 686 (Tex.Civ.App. 1929); Hexter Title and Abstract Co. v. Grievance Committee, 742 Tex. 506, 179 S.W.2d 946 (1944); Rattikin Title Co. v. Grievance Committee, 272 S.W.2d 948 (Tex.Civ.App. 1955). However, it is our opinion that the Commission sanctioned use of a form as above indicated that has been duly promulgated by the Commission would not constitute a violation of the statute or the illegal practice of law.

We therefore answer your first question in the affirmative.

In answer to your second question, it is our opinion that a violation of the proposed rule or regulation promulgated by the Texas Real Estate Commission, in accordance with Section 2 of the Act, by a licensee engaged in the real estate brokerage business, would constitute a "violation of any of the provisions of this Act" within the purview of Section 16(c)(23) of the Act, and upon proof of such, the Texas Real Estate Commission would be authorized to suspend or revoke a license theretofore issued to such broker or salesman. Attorney General's Opinion No. O-2869 (1940).

### S U M M A R Y

The Texas Real Estate Commission is authorized to require its licensees to use a specified contract form when acting as real estate brokers or salesmen.

Upon proof that a licensee knowingly uses a contract form, other than as specified by the Commission in negotiating a real estate contract as agent for another, the Commission may suspend or revoke the license theretofore issued to such licensee.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Bill Campbell
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
J. C. Davis
Bill Craig
Lin Shivers X
Milton Richardson X

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant