McCALEB, Justice.
Relators, Dr. E. D. Akin and Dr. L. R. Savoie, are licensed optometrists under Louisiana law, R.S. 37:1041-1065. They are engaged in the practice of optometry in Lake Charles, Louisiana, being employed by Pearle, Inc., a Louisiana Corporation doing business under the name of Gordon Optical Company.
During October of 1960 the Southwest Louisiana Optometric Society, composed of a group of optometrists practicing in the Lake Charles area, filed a complaint against relators with respondent, Louisiana State Board of Optometry Examiners, charging them with violating R.S. 37:1061(3), (6), (8), (9), (11) and (14) [1]
After a hearing before the Board, rela-tors were found guilty of all the charges against them except the alleged violation of paragraph (6) of R.S. 37:1061, and were suspended from the practice of optometry for a period of 30 days. Relators thereupon appealed to the district court, where, after a trial on the record, the Board’s ruling was reversed as to the charges of vio *835 lations of R.S. 37:1061(3), (8), (9) and (11) but affirmed as to the charge that re-lators violated R.S. 37:1061(14). The penalty of the 30-day suspension was upheld.
Relators brought the matter to the Court of Appeal, Third Circuit, for review and the Board answered the appeal. The Court of Appeal affirmed the findings of the district judge. See Akin v. Louisiana State Board of Optometry Examiners, La.App., 150 So.2d 807.
Upon application of relators, this Court granted certiorari. 244 La. 404, 152 So.2d 214. At the time the application was filed here, relators specified three errors allegedly committed by the Court of Appeal — to wit:
1. In finding that relators violated R. S. 37:1061(14).
2. In rejecting their contention that R.S. 37:1042, which provides for the appointment of the members of the Louisiana State Board of Optometry Examiners, is unconstitutional because it delegates the executive power of the Governor to private individuals, and
3. In denying their claim that the entire optometry statute is unconstitutional since it unlawfully delegates legislative power to the Board and in that it constitutes an unreasonable and arbitrary regulation of a lawful occupation.
The same questions anent the constitutionality of the optometry statute were then pending before us in Michell v. Louisiana Board of Optometry Examiners, La., 156 So.2d 457. However, since the granting of this writ, those questions have been decided adversely to relators and a rehearing in that case has been denied. See La., 156 So.2d 457. Our pronouncement there governs this case and, hence, a discussion of the relators’ claims of unconstitutionality would be inutile.
We pass on then to a consideration of the only point remaining in the case, i. e., that the Court of Appeal erred in holding that relators violated R.S. 37:1061(14) in that they advertised a “ * * * price, credit, terms, or agreement with reference to the practice of optometry.”
The record shows that, beginning August 1, 1960, relators’ employer launched an extensive campaign to secure business and, pursuant thereto, many advertisements were published in the press, television and other media. The gist of these advertisements is that Gordon Optical is an important name to the public and that there are many reasons why people prefer to go there for the visual care of their families. The advertisements, which are all more or less of the same tenor, continue:
“ * * * Certainly the expert doctors of optometry at Gordon Optical are a major factor; for people have learned that they fit glasses only when glasses are actually needed. Yes, Gordon Optical has a long reputation for dependability. This original Gordon Optical guarantee in writing is another reason why Gordon Optical has won so many friends. It not only guarantees your complete satisfaction, but it also guarantees every pair of prescription glasses against breakage for a whole year. Now, no matter how you break them, or how often, Gordon Optical guarantees to repair or to replace for a whole year * * *. Why don’t you stop by the next time you are near and be sure that you’re seeing right. Gordon Optical * * * two convenient offices. In Gordon Jewelers, 808 Ryan Street, Dr. Akin, Optometrist in charge * * * 2906 Ryan Street in the South-gate Shopping Center, Dr. L. R. Sa-voie, Optometrist in charge. They’re open all day, every day, even Saturday and you don’t need an appointment at Gordon Optical.” (Italics ours).
In another advertisement, which emphasizes that there is considerable breakage of eye glasses by the public generally, and *836 particularly during the Summer season, it is stated:
“ * * * The Gordon Optical guarantee that repairs them no matter how you break them nor how often for a whole year is so important to you. And this guarantee, a written guarantee goes with every pair of prescription glasses. It’s just one more reason why you will be glad you went to Gordon Optical for your visual care. Naturally, Gordon’s guarantees you complete satisfaction as well. You won’t need an appointment. * * * See Dr. Don Akin, Optometrist, at 808 Ryan Street, or Dr. L. R. Savo-ie, Optometrist, 2906 Ryan Street, in Southgate Shopping Center.” (Italics ours).
And another advertisement declares, in part:
“Just when you think your budget is in fine shape, something happens to your glasses. You drop them, step on them, sit on them. Then, there goes your budget. You needn’t have this expensive cost, and you won’t, when you have your eyes examined and glasses fitted at Gordon Optical. Glasses from Gordon Optical are guaranteed in writing against breakage for one full year * * * (Italics ours).
The evidence in the case shows that each of the advertisements, which refer to one-year guarantee of replacement for glass breakage, was submitted to and approved by relators before it was published.
Counsel for relators proclaim primarily that the advertisements are not violative of R.S. 37:1061(14) because the replacement of broken glasses is strictly an optical service.
It is, of course, true that replacement of glasses for which a prescription has already been filled is purely an optical function. And, if this were all the advertisements stated, they could not rightly be considered as publications of a price, credit or agreement with reference to the practice of optometry. But one part of the advertisements cannot be culled out and completely segregated from the other. They must be viewed in their entirety, as the meaning they suggest and intend to convey to any reasonable mind is that the public should patronize Gordon Optical for visual care — for, not only has Gordon competent optometrists in its employ but, additionally, when the customer has his vision tested and purchases new glasses there, he will be given a guarantee of new glasses without cost in case he breaks them within one year from the date of purchase. Hence, we agree with the Court of Appeal that it would be unrealistic to conclude that the publications herein were not violative of paragraph (14) of the statute, which prohibits “Advertising any price, credit, terms, or agreement with reference to the practice of optometry; * * * ”.
Counsel for relators further contend that, even though it is held that these advertisements for the replacing of broken lenses relate to an optometrical function, they were not violative of R.S. 37:1061(14) because they may not be regarded as advertisements of a price for such glasses.
We find no merit in this point. Obviously, publication by an optometrist that he will replace any broken glasses that he has prescribed without charge if they are broken within the space of a year is, in essence, a conditional promise of a rebate or an advance credit which relates to price and terms of his services. Indeed, it is an “agreement” by him pertaining to the practice of optometry to include a thing of value over and above the services he performs as an extra inducement to obtain patronage. This is precisely what the statute bans.
Finally counsel suggest that, since the district court and the Court of Appeal found that the Board erred in holding that relators violated four of the six charges made against them, the penalty of 30-day suspension should be drastically reduced.
*837 It strikes us that the 30-day suspension imposed by the Board for the five infractions for which it found relators guilty was most lenient. In fact, this short suspension for the one infraction, which the courts have upheld, could hardly be regarded as unreasonable and, therefore, we are not inclined to disturb the Board’s action in the case. If relators feel aggrieved, their remedy is to apply to the Board for relief.
For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

. R.S. 37 :1061 sets forth, inter alia, that “The board may refuse to issue or renew, or may suspend or revoke any certificate for any of the following causes:
“(3) Soliciting business from house to house or door to door either directly or indirectly.
“(6) Having professional connection with or lending his name to an illegal practitioner;
“(8) Employing or using ‘cappers’ or ‘steerers’ to obtain business;
“ (9) Deceiving or defrauding the public;
“(11) Advertising, in untruthful, improbable, impossible, or misleading statements with reference to the practice of optometry.
“(14) Advertising any price, credit, terms, or agreement with reference to the practice of optometry;”.