**TEXAS OPTOMETRY BOARD, Appellant,**

v.

**LEE VISION CENTER, INC., et al.,
Appellees.**

**No. 4713.**

Court of Civil Appeals of Texas,
Eastland.

Oct. 18, 1974.

Rehearing Denied Nov. 8, 1974.

John L. Hill, Atty. Gen. (Robert L. Oliver, Asst. Atty. Gen), for appellant.

Niemann & Niemann, Larry Niemann, Austin, filed amicus curiae briefs.

Bergman & Hicks, Douglas E. Bergman and John W. Hicks, Jr., Dallas, for appellee.

McCLOUD, Chief Justice.

The Texas Optometry Board entered orders suspending for five days the "Advertising Permits" of Lee Vision Center, Inc. and Terminal Hudson Realty Corp., after finding that the parties violated Section 5.-10, paragraphs (e), (f), (j) and (k), of Article 4552, the Texas Optometry Act, Vernon's Tex.Rev.Civ.Stat.Ann., (Supp. 1969). Lee Vision Center and Terminal Hudson Realty filed suit against the Board alleging that Section 5.10 of the Texas Optometry Act was unconstitutional. The trial court found that the Board's orders were supported by substantial evidence, but that paragraphs (b) and (k) of Section 5.-10 of the Act were unconstitutional. The court set aside the orders of the Board suspending the advertising permits of plaintiffs, Lee Vision Center, Inc., and Terminal Hudson Realty Corp. Defendant, Texas Optometry Board, has appealed. We reverse and render.

The trial court held that paragraphs (b) and (k) of Section 5.10 of Article 4552, violated the Due Process Clause of the U.S. Constitution, Fourteenth Amendment; Due Course of Law Clause of the Texas Constitution, Article 1, Section 19, Vernon's Ann.St.; Equal Protection Clause of the U.S. Constitution, Fourteenth Amendment; Equal Rights Clause of the Texas Constitution, Article 1, Section 3; and, the Privileges and Immunities Clause of the U.S. Constitution, Fourteenth Amendment, and Texas Constitution, Article 1, Section 3.

The Board contends plaintiffs failed to establish that paragraphs (b) and (k) of Section 5.10 are unconstitutional, and since the trial court found that the Board's orders were supported by substantial evidence the judgment of the trial court should be reversed and rendered. We agree.

■ It should be first noted that the Texas Optometry Act makes no provision for an appeal from a suspension of an Advertising Permit by the Board. However, we hold that a vested property right has been affected by the Board's action and plaintiffs have an inherent right of appeal. Brazosport Savings & Loan Ass'n v. American Savings & Loan Ass'n, 161 Tex. 543, 342 S.W.2d 747 (1961); City of Amarillo v. Hancock, 150 Tex. 231, 239 S. W.2d 788 (1951).

The trial court found that each member of the Board who testified as well as a substantial number of other optometrists were in direct competition with dispensing opticians in that such optometrists by filling prescriptions for eyeglasses, and furnishing and fitting eyeglasses, perform the same service or activity as opticians.

The thrust of plaintiff's argument is that Section 5.10 of the Act unconstitutionally discriminates against opticians in favor of optometrists with regard to advertising because: (1) Sec. 5.09 of the Act permits an optometrist to advertise "reference to price" without obtaining an advertising permit; while (2) Sec. 5.10 permits an optician to advertise "reference to price" only after

obtaining an advertising permit from the Texas Optometry Board.

Plaintiffs also contend Sec. 5.10(k) [1] creates an unreasonable classification between optometrist and dispensing opticians in that Sec. 4.04(e) [2] of the Act provides that the Board may reissue a license to practice to an optometrist whose license has been revoked, while Sec. 5.10(k) provides that on the second willful and repeated violation of Sec. 5.10, the optician's "Advertising Permit" shall be permanently cancelled and may not be reissued or renewed.

Section 5.09 provides:

"Art. 4552—5.09 *Advertising by optometrists*

(a) No optometrist shall publish or display, or knowingly cause or permit to be published or displayed by newspaper, radio, television, window display, poster, sign, billboard, or ·any other advertising media, any statement or advertisement *of any price* offered or charged by him for any ophthalmic services or materials, or any statement or advertisement concerning ophthalmic lenses, frames, eyeglasses, spectacles, or parts thereof which is fraudulent, deceitful, misleading, or which in any manner whatsoever tends to create a misleading impression, including statements or advertisements of bait, discount, premiums, gifts, or any statements or advertisements of a similar nature, import, or meaning.

(b) This section shall not operate to prohibit optometrists who also own, operate, or manage a dispensing opticianry from advertising in any manner permitted under any section of this bill so long as such advertising is done in the name of the dispensing opticianry and not in the name of the optometrist in his professional capacity." (Emphasis ours.)

Section 5.10 provides in part:

"Art. 4552—5.10 *Advertising by dispensing opticians*

(a) No person, firm or corporation shall publish or display or cause or permit to be published or displayed in any newspaper or by radio, television, window display, poster, sign, billboard or any other means or media any statement or advertisement concerning ophthalmic lenses, frames, eyeglasses, spectacles or parts thereof which is fraudulent, deceitful or misleading, including statements or advertisements of bait, discount, premiums, price, gifts or any statements or advertisements of a similar nature, import or meaning.

(b) No person, firm or corporation shall publish or display or cause or permit to be published or displayed in any newspaper, or by radio, television, window display, poster, sign, billboard or any other means or media, any statement or advertisement *of or reference to the price or prices* of any eyeglasses, spectacles, lenses, contact lenses or any other optical device or materials or parts thereof requiring a prescription from a licensed physician or optometrist unless such person, firm or corporation complies with the provisions of Subsections (c)–(j) of this section.

(c) The person, firm or corporation shall obtain from the board an "Adver-

---

1. (k) Willful or repeated violation by any person, firm or corporation holding an "Advertising Permit" hereunder of any provision of Subsections (d)–(j) of this section shall be grounds for suspension of such "Advertising Permit" by the board for a period not to exceed six months. If after the expiration of such suspension, the board, after a hearing, finds that there has been a second or subsequent willful or repeated violation of any provision of Subsections (d)–(j) of this section such "Advertising Permit" shall be permanently cancelled and may not be reissued or renewed.

2. (e) Upon application, the board may reissue a license to practice optometry to a person whose license has been revoked but such application shall not be made prior to one year after the revocation and shall be made in such manner and form as the board may require.

tising Permit," which permit shall be granted to any person, firm or corporation which is engaged in the business of a dispensing optician in Texas." (Emphasis ours.)

The rule is well established that a law duly enacted is presumed to be valid and doubts as to its constitutionality should always be resolved in favor of constitutionality. Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155 (1948); Ohio Oil Company v. Giles, 149 Tex. 532, 235 S.W.2d 630 (1950). A statute should, if reasonably possible, be given a construction that will not render it invalid. State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960); County of Cameron v. Wilson, 160 Tex. 25, 326 S.W.2d 162 (1959).

As we interpret the Act it distinguishes between two separate groups of optometrists. Section 5.09(a) recognizes those optometrists who *do not* own, operate or manage a dispensing opticianry. This group is absolutely prohibited from advertising "any price", whether directly by specific amount, or indirectly by reference to price, such as "economical price" or "low price." Plaintiffs rely upon the interpretation given Sec. 5.09(a) in Burton v. Rogers, 492 S.W.2d 695 (Tex.Civ.App.—Beaumont 1973) rev'd on other grounds 504 S.W.2d 404 (Tex.1974) to support their argument that optometrists under Sec. 5.09(a) are not prohibited from advertising price indirectly by statements such as "reasonable price". We disagree with the interpretation announced by the court of civil appeals in *Burton*.

We choose to follow the rule announced in Donahue v. Andrews, 47 P.2d 940 (Oregon Sup.1935), where the question presented was whether an advertisement by a dentist of "modern dentistry cheap" violated a statute prohibiting dentists from "advertising prices" for personal services. The court said:

"The precise question then is whether advertising 'modern dentistry cheap' is 'advertising prices for professional services.' True, plaintiff has not stated any definite or fixed price, but he has, nevertheless, through carefully guarded language, conveyed to the public the idea that his charge for dental services will be lower than that ordinarily made for such work. Undoubtedly the word, 'cheap' connotes a price below the average charge. It means a 'low price.' Having in mind the purpose and spirit of the statute, we are unable to agree with plaintiff that he can advertise in any manner whatsoever 'prices for professional services,' if he avoids stating any definite or fixed price. We think the advertisement is a plain attempt to evade the spirit of the law . . . If plaintiff's contention is upheld in this case, he could, with equal propriety, advertise that he would do dental work cheaper than any other dentist in Lane county, or in the state of Oregon. All sorts of catch phrases covering prices as a lure or bait for the public would be the order of the day by those who care not for the ethics of a profession. However, plaintiff is not dealing in commodities, but is a member of a learned profession. The rules of the market place do not apply."

In Michon v. Louisiana State Board of Optometry Examiners, 121 So.2d 565 (La. Ct.App.—2nd Cir. 1960) the appellant contended that indirect references to price such as "low price" or "popular price" were not prohibited since they were not references to a specific price. In disapproving appellant's contention, the court said:

"The crux of appellant's argument is that he has not violated paragraph (14) of Section 1061 of the Statute for the reason that the statements contained in the advertisements were worded in general rather than specific terms. It is our thinking that if it is the purpose of the statute to properly regulate the conduct of the profession in order to maintain high standards and obtain better quality of professional work for betterment of public health, the question of whether an

advertisement proposes a low price or a popular price in lieu of a specific price, is of no significance . . . "

In commenting upon the use of the word "any" which is also used in Sec. 5.09(a) of the Texas Optometry Act, the court added:

"We are of the opinion the language used in LSA–R.S. 37:1061(14), prohibiting advertising 'any price . . .' is sufficiently definite and certain to permit of proper interpretation in its enforcement . . . the legislative intent to be gathered from the use of 'any' is to denounce and forbid as unethical conduct any advertising which announces to the public that the professional services of an optometrist are available at a cheaper price . . . than by others in the profession."

See also: Texas Attorney General Opinion No. M–1029 (1971); Akin v. Louisiana State Board of Optometry Examiners, 150 So.2d 807, (La.Ct.App.—3rd Cir. 1963), affirmed, 245 La. 481, 158 So.2d 833 (1963); Louisiana State Board of Optometry Examiners v. Pearle Optical, 177 So.2d 164 (La.Ct.App.—3rd Cir. 1965).

■ We hold that optometrists who do not own, operate or manage a dispensing opticianry are prohibited under the Act from advertising *any price,* whether directly or indirectly.

■ Sec. 5.09(b) recognizes the category of optometrists who *do own,* operate or manage a dispensing opticianry and permits price advertising, either directly or indirectly, after an advertising permit is obtained, so long as such advertising is done in the name of the dispensing opticianry and not in the name of the optometrist in his professional capacity.

Therefore, under our interpretation of Sections 5.09 and 5.10 there is no unreasonable classification or discrimination. Plaintiffs are in a better position than optometrists who do not own, operate or manage a dispensing opticianry and in the same position as those optometrists who do own, operate or manage such facilities.

Many of plaintiffs' contentions were answered by the United States Supreme Court in Williamson v. Lee Optical Company, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) wherein the court held that advertising of optical appliances by dispensing opticians was related to public health and could be restricted or even abolished by the state under its police power. It was contended there by dispensing opticians that state regulation of advertising relating to the sale of eyeglass frames and other optical appliances violated the Due Process Clause of the Fourteenth Amendment because such regulation intruded into a mercantile field only casually related to public health. The court said:

"We see no constitutional reason why a State may not treat all who deal with the human eye as members of a profession who should use no merchandising methods for obtaining customers."

The court added:

"The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because . they may be unwise, improvident, or out of harmony with a particular school of thought . . . We emphasize again what Chief Justice Waite said in Munn v. Illinois, 94 U.S. 113, 134, 24 L.Ed. 77, 87, 'For protection against abuses by legislatures the people must resort to the polls, not to the courts.'"

The contention that the statute violated the Equal Protection Clause of the Fourteenth Amendment was answered as follows:

"The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Tigner

v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124, 130 ALR 1321. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. The legislature may select one phase of one field and apply a remedy there, neglecting the others. A. F. of L. v. American Sash [& Door] Co., 335 U.S. 538, 69 S.Ct. 258, 260, 93 L.Ed. 222, 6 ALR 2d 481. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

See also: Due Process Clause—Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Lincoln Fed. L. U. v. Northwestern I. & M. Co., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949); Equal Protection Clause—Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Tigner v. Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124 (1940).

The Texas courts when confronted with questions involving the Due Course of Law and Equal Rights Clause of the Texas Constitution consistently apply the reasoning and rationale announced by the United States Supreme Court on questions of due process and equal protection. Texas Water Rights Commission v. Wright, 464 S.W.2d 642 (Tex.1971); Tisko v. Harrison, 500 S.W.2d 565 (Tex.Civ.App. Dallas 1973, writ ref. n. r. e.).

The Texas Optometry Act contains substantial requirements for obtaining and retaining a license to practice optometry. A license is not required of a dispensing optician. The Act defines the practice of optometry to be the employment of objective or subjective means, without the use of drugs, for the purpose of ascertaining and measuring the powers of vision of the human eye, and fitting lenses or prisms to correct or remedy any defect or abnormal condition of vision. As observed in Williamson v. Lee Optical, supra, the optician is an artisan qualified to grind lenses, fill prescriptions, and fit frames. The Legislature has established separate legislative classifications for optometrists and dispensing opticians and our courts have consistently held that the Legislature may constitutionally classify persons, organizations and corporations according to their business and apply different rules to those belonging to different classes. County of Cameron v. Wilson, 160 Tex. 25, 326 S.W. 2d 162 (1959); Board of Insurance Com. v. Great Southern Life Insurance Co., 150 Tex. 258, 239 S.W.2d 803 (1951); Supreme Lodge United Benefit Association v. Johnson, 98 Tex. 1, 81 S.W. 18 (1904); Reed v. City of Waco, 223 S.W.2d 247 (Tex.Civ.App.—Waco 1949, writ ref'd).

■ Plaintiffs' argument that paragraphs (b) and (k) violate the Privileges and Immunities Clause of the United States Constitution was answered in Head v. Board of Examiners, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963), wherein the court held:

". . . the Privileges and Immunities Clause of the Fourteenth Amendment does not create a naked right to conduct a business free of otherwise valid state regulation."

■ Plaintiffs further argue that they were not afforded procedural due process because the members of the Texas Optometry Board were biased and had an economic interest in the results of the hearings. The United States Supreme Court recently held in Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), that members of administrative boards who have "substantial pecuniary interest in legal proceedings should not adjudicate" such disputes. We think *Gibson* is distinguishable. First, plaintiffs in the instant case did not allege and the trial court did not find that the members of the Board

were disqualified. The court in *Gibson* noted that under the Alabama statute only independent practitioners of optometry not employed by others could serve on the Alabama Board of Optometry. The board's decision could have resulted in the revocation of the licenses of all optometrists in the state who were employed by business corporations, and these optometrists accounted for nearly one-half of all the optometrists practicing in Alabama. The court reasoned that under those circumstances the pecuniary interest of the board members was substantial. No such substantial pecuniary interest is shown here. Under the Texas Optometry Act if the Board determines that Section 5.10 has been violated their only power is to suspend the "Advertising Permit." The only purpose of an Advertising Permit is to enable a dispensing optician to advertise "price," either directly or indirectly. An optician who has no advertising permit, or whose permit has been suspended, may advertise service or quality or other matters not prohibited by the Act. The evidence fails to show that the members of the Texas Optometry Board had that substantial degree of pecuniary interest recognized in *Gibson* as being sufficient to disqualify the board members from adjudicating the dispute.

Advertising by both optometrists and dispensing opticians affects the visual well-being of Texas citizens and is subject to regulation under the state police power. We hold that paragraphs (b) and (k) of Section 5.10 of Article 4552, do not violate the Due Process Clause; Due Course of Law Clause; Equal Protection Clause; Equal Rights Clause; or the Privileges and Immunities Clause of the United States or Texas Constitution.

By cross-point Lee Vision Center and Terminal Hudson Realty contend the trial court erred in finding that the orders of the Optometry Board were supported by substantial evidence. Appellees did not except to the judgment, give notice of appeal, or in any way inform the court of their dissatisfaction with the judgment entered. The point is overruled. West Texas Utilities Company v. Irvin, 161 Tex. 5, 336 S. W.2d 609 (1960); Citizens National Bank of Lubbock v. Maxey, 461 S.W.2d 138 (Tex.Civ.App.—Amarillo 1970, writ ref. n. r. e.); Maloney v. Strain, 410 S.W.2d 650 (Tex.Civ.App.—Eastland 1966, no writ); Security Insurance Co. v. Pioneer Casualty Co., 449 S.W.2d 158 (Tex.Civ.App.—Houston (1st Dist.) 1970, writ ref. n. r. e.).

The judgment of the trial court is reversed and judgment rendered affirming the orders of the Texas Optometry Board.