

# THE ATTORNEY GENERAL
## OF TEXAS

March 31, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas 77002

Opinion No. JM-1036

Re: Constitutionality of pro-
vision of Code of Criminal Pro-
cedure limiting justice court
venue based on the size of the
county (RQ-1540)

Dear Mr. Driscoll:

You ask four questions regarding article 45.22 of the Code of Criminal Procedure, which provides:

> Sec. 1. No person shall ever be tried in any justice precinct court unless the offense with which he was charged was committed in such precinct. Provided, however, should there be no duly qualified justice precinct court in the precinct where such offense was committed, then the defendant shall be tried in the justice precinct next adjacent which may have a duly qualified justice court. And provided further, that if the justice of the peace of the precinct in which the offense was committed is disqualified for any reason for trying the case, then such defendant may be tried in some other justice precinct within the county.

> Sec. 2. No constable shall be allowed a fee in any misdemeanor case arising in any precinct other than the one for which he has been elected or appointed, except through an order duly entered upon the minutes of the county commissioners court.

> Sec. 3. Any justice of the peace, con-stable or deputy constable violating this Act shall be punished by a fine of not less than $100 nor more than $500.

>    Sec. 4. The provisions of this Article
> shall apply only to counties having a popula-
> tion of 225,000 or over according to the last
> preceding federal census.

The above-quoted language, codified as article 45.22 of the Code of Criminal Procedure in 1965, is unchanged from that adopted in 1934 and codified as article 889a of the former Code of Criminal Procedure. Acts 1965, 59th Leg., ch. 722, at 525; Acts 1934, 43d Leg., 2d C.S., ch. 14, at 29.

Your first question is:

>    Is Tex. Crim. Proc. Code Ann. art. 45.22
> (1979) unconstitutional because it limits the
> venue of a justice of the peace court in
> counties in excess of a population of 225,000
> to cases arising in its own precinct yet per-
> mits justice of the peace courts in counties
> with smaller populations to exercise venue
> over cases arising outside its precinct?

As indicated in your brief, it now appears settled that article 45.22 is not in conflict with article V, section 19, of the Texas Constitution, which provides for the jurisdiction of justice of the peace courts. Though Attorney General Opinions V-496 (1948) and C-602 (1966) found such a conflict, the opinion in _Bradley v. Swearingen_, 525 S.W.2d 280 (Tex. Civ. App.- Eastland 1975, no writ), indicated that those rulings were in error. _See_ Attorney General Opinion H-1026 (1977)(overruling Attorney General Opinions V-496 and C-602 in light of _Bradley_).[1]

Thus, assuming that there is no constitutional infirmity in article 45.22 vis-a-vis article V, section 19, we turn to the issue raised in your brief as to the constitutionality of article 45.22 under the United States Constitution, amendment XIV, section 5, the Equal Protection Clause. You also refer to article I, section 3, of the Texas Constitution. ("All free men, when they form a social

---

    1. _But see_ _Zulauf v. State_, 591 S.W.2d 869, 872 n.5 (Tex. Crim. App. 1979) (the "tide of disagreement, . . . seems to rise and fall seasonally, over limitation on the territorial jurisdiction of a justice of the peace court").

compact, have equal rights . . . .")  Since it appears  that the protection afforded by article  I, section 3 is no  more extensive in  the  area  under  discussion  here  than  that afforded by  the federal  Equal Protection  Clause, we  will consider the constitutionality of  article 45.22 only  under the latter provision.  See Texas Optometry Bd. v. Lee Vision Center, Inc., 515 S.W.2d 380, 386 (Tex. Civ. App. - Eastland 1974, writ  ref'd n.r.e.).  ("Texas courts  when  confronted with questions involving  the Due  Course of  Law and  Equal Rights Clause of the  Texas Constitution consistently  apply the reasoning and rationale  announced by the United  States Supreme  Court  on  questions  of due  process  and  equal protection.")  See also Attorney  General  Opinion  JM-455 (1986) and the authorities cited there.

As regards a claim of an equal protection violation  in connection with the article 45.22 justice of the peace court venue restrictions for larger counties, we note at the  out-set that the article might be more accurately  characterized as discriminating  among, or  making classifications  among, offices and not  "persons" within the  meaning of the  Four-teenth Amendment's proscription  on  denial "to  any  person . . . [of] the equal protection of  the laws."  It is  clear that the legislature  has power to  attach different  duties and  limitations  to  the  same  offices  in  different jurisdictions.  See, e.g., Attorney  General  Opinion  JM-455 (1986) (holding that  legislature  may prohibit  private practice of law  by county attorneys  in some  jurisdictions and allow it  in others).  All persons are  on notice  when they seek, and take  the oath of office  for, the office  of justice of the peace  in a county  covered by article  45.22 that the restrictions in article 45.22 will apply to them as officeholders.

Moreover, as  regards  an  equal  protection  claim  in regard to the venue restrictions of article 45.22, you state in your brief that such a challenge would be subject to  the "rational basis" test.   Under an equal protection analysis,

> [t]he general  rule  is that  legislation  is presumed to be valid and will be sustained if the classification  drawn by  the statute  is rationally  related  to  a  legitimate  state interest.

City of Cleburne  v.  Cleburne Living  Center, 473 U.S.  432, 440 (1985).  Further indicating the degree of scrutiny which would be applied  under a  "rational basis" test  to such  a claim, a plurality of the U. S. Supreme Court in Clements v.

Fashing, 457 U.S. 957 (1982), held that unless a state statute burdens a "suspect classification" or a "fundamental right," classifications made by the statute "are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." Id. at 963. See also Reed v. Reed, 404 U.S. 71 (1971). Other equal protection cases have developed intermediate scrutiny tests for application in certain cases. See, e.g., Mississippi Univ. for Women v. Hogan, 458 U.S. 718 (1982) (sex); Mills v. Habluetzel, 456 U.S. 91 (1982) (illegitimacy). However, you have not indicated in your brief any reasons why a court might apply any test other than the minimum scrutiny/rational basis test to a claim under article 45.22, and we will accordingly consider only the possibility of success of such a claim made subject to such minimum scrutiny.

Though the particular considerations that apparently motivated the original enactment of the provisions now codified as article 45.22 may no longer be applicable, we can conceive of reasons for the legislature's having retained these provisions in current law, namely, the more orderly and efficient administration of justice of the peace courts in larger counties.[2] Accordingly, we think that a

---

2. When enacted in 1934, the bill containing these provisions bore the following emergency clause in pertinent part:

> The fact that Constables and Deputy Constables in this State arrest and prosecute many persons for alleged misdemeanors committed in Precincts other than the Precinct in which the Constable was elected or the Deputy Constable appointed for the sole purpose of mulcting the public out of fees creates an emergency . . . .

Acts 1934, 43d Leg., 2d C.S., ch. 14, § 5, at 30. An amendment to Texas Constitution, article XVI, section 61 in 1972 prohibited compensation of any constables or justices of the peace on a fee basis and thus arguably eliminated the evil at which the provisions of what is now article 45.22 were originally addressed. However, we note that, though we are not generally finders of fact in the opinion process,
(Footnote Continued)

"rational basis" for the classifications made by article 45.22 regarding justice of the peace court venue in larger counties would be found by a court entertaining a challenge such as you present, and that the court would find the venue provisions of article 45.22 constitutionally sound for equal protection purposes under a "rational basis" test.

You also discuss in your brief whether the application of article 45.22 only to counties with a population over 225,000 runs afoul of the prohibition in Texas Constitution, article III, section 57 on local or special laws. We do not think it does. Article 45.22 does not confine its applicability to counties having the designated population at the time of its enactment, nor is it tied to any particular census. See City of Houston v. Allred, 71 S.W.2d 251 (Tex. 1934).

"Resort to population brackets for the purpose of classifying subjects for legislation is permissible where the spread of population is broad enough to include or segregate a substantial class, and where the population bears some real relation to the subject of legislation and affords a fair basis for the classification." Ex Parte Spring, 586 S.W.2d 482, 485 (Tex. Crim. App. 1978). See, e.g., Smith v. Decker, 312 S.W.2d 632 (Tex. 1958); City of Fort Worth v. Bobbitt, 36 S.W.2d 470 (Tex. 1931); Mouton v. State, 627 S.W.2d 765 (Tex. App. - Houston [1st Dist.] 1981, no writ).[3]

---

(Footnote Continued)
information supplied in a brief submitted in connection with this request indicates that the different salaries set for the various justices of the peace in Harris County, as adopted by the commissioners court, appear to bear a direct relationship to the revenues generated in the respective justice precincts. Thus the original purpose of the provisions of article 45.22 -- curtailing the "mulcting" of fees to increase justices' compensation -- may still be served by those provisions.

3. When enacted in 1934, the provisions of what is now article 45.22 applied to only Bexar, Dallas and Harris counties. According to the 1980 federal census, nine Texas counties have populations in excess of 225,000. The 1990 census will likely show that more Texas citizens live in counties subject to article 45.22 than do not.

Your second question is:

> Does Tex. Crim. Proc. Code Ann. art. 45.22 (1979) violate the equal protection clause of the Texas Constitution art. I § 3 (1879) and U.S. Const. amend XIV § 5 because it imposes a criminal fine on a justice of the peace in counties with a population in excess of 225,000 for trying an issuance of a bad check case arising outside the precinct, but imposes no criminal fine on a justice of the peace in counties with a population less than 225,000 for trying an issuance of a bad check case arising outside its precinct?

"Texas has long recognized that legislation limited in operation to only a portion of the state or prescribing different penalties for different geographical areas is not invalid for denying equal protection where there is a reasonable basis for the distinction and all persons similarly situated in the same place are equally treated." Mouton v. State, supra (addressing constitutionality of arson provision making certain conduct in incorporated cities or towns an offense but not so providing with respect to such conduct in unincorporated areas). See, e.g., State ex rel. Grimes County Taxpayers Ass'n v. Texas Mun. Power Agency, 565 S.W.2d 258 (Tex. Civ. App. - Houston [1st Dist.] 1978, writ dism'd); Beckendorff v. Harris-Galveston Coastal Subsidence Dist., 558 S.W.2d 75 (Tex. Civ. App. - Houston [14th Dist.] 1977), aff'd, 563 S.W.2d 239 (Tex. 1978).

In view of our conclusion in response to your first question that a court would probably find a rational basis for the legislature's adopting and maintaining in effect article 45.22, i.e. the promotion of more efficient and orderly justice of the peace court administration in urban areas, we think that the article's provision for a penalty for the violation of its venue restrictions would also be found to have a rational basis and thus to be constitutionally sound.

Your third question is:

> Does a justice of the peace have an affirmative obligation at the filing stage to ascertain the precinct in which the offense of 'issuance of a bad check' was committed or may he comply with the mandate of Tex. Crim.

Proc. Code Ann. art. 45.22 (1979) and refuse
to exercise jurisdiction at the trial stage?

Again, section 1 of article 45.22 provides in relevant part: "No person shall ever be <u>tried</u> in any justice precinct court unless the offense with which he was charged was committed in such precinct." (Emphasis added.)  We think that it is clear on the face of section 1 that a justice of the peace subject to article 45.22 has not violated section 1 until he "tries" a person for an offense committed outside the precinct.  Whatever the scope of the word "try" in section 1, it appears that a "trial" would not have commenced at the "filing stage," and, therefore, a failure at the "filing stage" to ascertain that the offense was committed outside the precinct would not in itself violate the prohibition in section 1 on "trying" such a case.  <u>See, e.g.</u>, <u>Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.</u>, 707 S.W.2d 281 (Tex. App. - Fort Worth 1986, writ ref'd n.r.e.) ("trial" under rule 63 of the Texas Rules of Civil Procedure does not include hearing on a plea to jurisdiction); <u>Flora v. Scott</u>, 398 S.W.2d 627 (Tex. Civ. App. - Dallas 1965, writ ref'd n.r.e.)(term "trial" broad enough to encompass all proceedings from time of pretrial hearings or hearings <u>in limine</u>).

Thus we conclude that a justice of the peace does not yet have an "affirmative duty" under article 45.22 at the "filing stage" to "ascertain the precinct in which the offense was committed."[4]  He may rather, as you say, comply with article 45.22 by "refusing to exercise jurisdiction" in such a case at the "trial stage."

You point in your brief to the statement in Attorney General Opinion JM-190 (1984) that "it is not proper for a justice of the peace . . . to <u>accept</u> a bad check case when the offense did not occur within his precinct."  (Emphasis

---

4.  Obviously it would be a better practice from the standpoint of judicial efficiency and public convenience for a justice of the peace to ascertain as early as possible whether a bad check case filed in his court arose from an offense committed outside his precinct, where article 45.22 applies.  Our ruling here is simply that a justice has not violated the mandate of article 45.22 by failing at the "filing stage" to ascertain that the offense was committed outside the precinct.

added in your brief.)   Attorney General Opinion JM-190 (1984) at 4.   We note that the rulings in Attorney General Opinion JM-190 were made in response to several questions from your office asking whether "[it is] proper for a justice of the peace in Harris County to . . . <u>accept</u> a bad check charge/complaint" under various circumstances (emphasis added).   <u>Id.</u> at 1.   Whatever the scope of the word "accept" in the questions asked and answers given in Attorney General Opinion JM-190, we now reiterate in response to your specific question, and by way of clarification of Attorney General Opinion JM-190, that we believe a justice of the peace subject to the provisions of article 45.22 does not violate the prohibition in that article, on "trying" a person for an offense committed outside the precinct, by failing at the "filing stage" to ascertain that the offense was committed outside the precinct.

You also point in your brief to the following language in Attorney General Opinion H-1026 (1977):

> Your final question involves the possible sanctions for a magistrate's refusal to observe the provisions of article 45.22.   That article provides for a fine in such an instance.   Furthermore, a corrupt and willful violation of article 45.22 could constitute official misconduct and subject an offending magistrate to removal.   V.T.C.S. arts. 5970 - 5997; <u>see</u> <u>Brackenridge v. State</u>, 11 S.W. 630 (Tex. Civ. App. 1889, no writ).

Attorney General Opinion H-1026 (1977) at 3.   Stating that "concerns with respect to an ascertainable standard of guilt have been raised," you suggest that Attorney General Opinion H-1026 indicates that there must be "willful or deliberate disregard of the venue provision before the criminal penalty is imposed." We think that the phrase "corrupt and willful violation of article 45.22" in the above-quoted language from Attorney General Opinion H-1026 referred not to the culpable mental state required for an offense under section 3 of article 45.22, but rather to the mental state required for "official misconduct," as provided for then in V.T.C.S. article 5973 (official misconduct "includes any willful or corrupt failure, refusal or neglect of an officer to perform any duty enjoined on him by law"), now Local Government Code section 87.011 (using the language "intentional or corrupt failure, refusal, or neglect," etc.).   Short of the "intentional or corrupt" mental state required for official misconduct, the offense created under section 3 of article

45.22, we think,   requires only   one or more   of the   mental states listed in Penal Code section 6.02, subsection (c):

> (c)   If the definition of an offense   does not prescribe   a culpable   mental state,   but one is nevertheless required under Subsection (b) of   this section,   intent, knowledge,   or recklessness suffices   to establish   criminal responsibility.[5]

See also Penal Code § 6.03   (definitions of culpable   mental states).

Your fourth question is:

> Is Tex.   Crim.   Proc.   Code Ann.   art.   45.22, unconstitutional because it imposes differing costs for   the same   misdemeanor offenses   by only   restricting   constables   in   populous counties   from   collecting   arrest   fees   for out-of-precinct   misdemeanor   offenses   but permits   constables   in   counties   with   a population   less   than   225,000   to   collect arrest fees for out-of-precinct offenses   and relies   upon   the   commissioners   courts   of populous counties to issue orders to   correct this unconstitutional assessment of costs?

Again, section 2 of article 45.22 of the Code of Criminal Procedure provides:

> Sec. 2.   No constable   shall be allowed   a fee in any   misdemeanor case   arising in   any precinct other than the one for which he   has been elected or appointed, except through   an

---

5.   Subsection (b) of section 6.02 provides:

> (b)   If the definition of an offense   does not prescribe   a culpable   mental state,   a culpable   mental   state   is   nevertheless required   unless   the   definition   plainly dispenses with any mental element.

We do not think that   article 45.22 "plainly dispenses   with any mental element" for the offense it creates.

order duly entered  upon the  minutes of  the county commissioners court.

If section 2 were read to refer to fees for services of constables to be turned over to  "[a] clerk of a court or  a county clerk"  under  article  102.001(f)  of  the  Code  of Criminal Procedure, or to  the "custodian of a . . . county treasury" under  article 102.011(f),  the section  would  be unconstitutional as "allowing different costs to be assessed in different counties for the same penal offense . . . [thus violating]  both 'due  process'  and  'equal  protection' constitutional rights."  Attorney  General  Opinion  JM-880 (1988) at 3.

On the other  hand, if  this 1934 language  is read  to refer to a fee to be retained by a constable for services in connection with  criminal matters  in justice  of the  peace courts, it has been inoperative  since 1973, when an  amend-ment to article XVI, section  61, of the Texas  Constitution took effect prohibiting the compensation of any constable on a fee basis.

We think  it unnecessary  to choose  between these  two possible readings of section  2, since under either  reading the section is at present a nullity.

## S U M M A R Y

A court  would  probably find  a  rational basis for  the venue  restrictions placed  by Code of Criminal Procedure, article 45.22  on justice of the peace courts in counties  with a population of  225,000 or  more, and  would thus likely  find  those  venue  restrictions constitutional  under  the  United  States Constitution, amendment  14, section  5,  and the Texas Constitution, article I, section 3, and article III, section 57.

Similarly, a  court  would  probably  find that the  criminal penalty provided  for  in section 4 of article  45.22 for violation  of the provisions of  that article is  constitu-tional under the  Equal Protection Clause  of the United  States  Constitution,  and  under article I, section 3, of the Texas  Constitu-tion.

A justice of the peace subject to article 45.22 does not violate the provisions of that article by failing to ascertain at the "filing stage" that the offense in question was committed outside his precinct. He may comply with article 45.22 by making such determination at the "trial stage."

Article 45.22, section 2, prohibiting the allowance of a fee to a constable in a mis-demeanor case arising outside the constable's precinct, except by commissioners court order, is either unconstitutional or cur-rently inoperative and is in either case a nullity.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General